**DAFFNER, et ux v. HOUGH.**

Circuit Court, Dade County.

May 7, 1953.

Brown & Miller, Miami, for plaintiffs.

Sommers, Frank & Weston, Miami Beach, for defendant.

GEORGE E. HOLT, Circuit Judge.

The plaintiff husband, a humble unlettered man, a house painter by trade, finding himself in desperate financial straits faced the necessity of raising $1,800 with which to comply with a contract for the purchase of his home, in which he had placed all his life savings, and needing such amount within a very short space of time, applied to the defendant for assistance in this respect.

The defendant agreed to procure the money, and charged plaintiffs $300 for his services in connection therewith. The receipt for this money reads as follows—"For services rendered. Refund $275 if deal doesn't go through."

Thereafter defendant simply telephoned the Public Mortgage Co., a lending concern, which promptly lent plaintiffs the required $1,800, but compelled them to sign a mortgage and note in the sum of $2,200 with interest at 10% per annum. In the list of expenses (plaintiffs' exhibit #1) Public Mortgage Co. retained $213.20 for its services and paid the defendant herein the sum of $100 for bringing plaintiffs to the company. This figure added to the sum of $300 already received, enriched defendant in the sum of $400 for the service of telephoning Public Mortgage Co.

The total amount of cost of plaintiffs in procuring the small sum of $1,800 (not mentioning the legitimate items such as abstract, recording, stamps, etc.) rose to the startling figure of $700. (Added to this amount was $50 in fees for the attorney of the mortgage company, which could be, but is not considered in arriving at our totals.)

The mortgage issued to the Public Mortgage Co. is a usurious one and contravenes both the criminal and civil statutes of the state of Florida. See sections 687.02—.03—.04—.07, Florida Statutes 1951, also Ayvas v. Green (Fla.), 57 So. 2d 30.

Assuming that $2,200 is a legitimate figure, the cost of plaintiffs of securing that sum amounts to more than 18% interest, which in itself is usurious, but when added to the 10% interest charged in the note itself, totals interest to 28% per annum, and under the law the entire principal amount, plus interest should be forfeited.

On the other hand if we do not consider the figure of $2,200 as actual money lent, and consider the $1,800 as the actual funds received by plaintiffs (which is the truth), the percentage cost is more than 22% and when added to the 10% interest written in the note itself means to the borrowers a total of more than 32% interest charged, which is usurious, and under the law the entire amount, both principal and interest should be forfeited.

If we add the $300 paid to the defendant to the $400 paid to the Public Mortgage Co., a grand total of $700 cost to obtain a loan of $1,800, then the interest for that is more than 33%, and when added to the 10% written in the note gives a total of more than 43%—usurious interest requiring under the law a forfeiture of the entire amount, both principal and interest.

The court heard the testimony of all the witnesses. The only excuse advanced by the defendant for the amount of money he extracted from the plaintiffs—the Public Mortgage Co. was not made a party defendant—was that the plaintiffs were in desperate need of the money. This is exactly why the laws of this state are in effect, so as to protect people in the category of the plaintiffs who find themselves in such adverse financial position that they may be willing to agree to any terms to obtain the needed money.

Here is presented one of the worst cases of over-reaching and unfairly taking advantage of an individual ever heard in this court. Usury has been condemned throughout the centuries, from the time the money changers were thrown out of the temple, not only as cruel and heartless, but as a deterrent to good business and the free flow of goods. As early as 1598 the bishop of Norwich condemned them thusly—"A legal thief, a bloodless murderer, a fiend incarnate, a false usurer," which was of the same tenor as an old Hebrew proverb—"Usury is murder."

More than $700 cost for $1,800! Plaintiffs paid twice for the same thing. Just what services did defendant render? None whatsoever to plaintiffs. He did aid the mortgage company by referring plaintiffs to them, who in turn gave him $100 for same.

In other words he was paid by both parties. Can a man serve two masters?

Need more be said? Belaboring the point only results in redundancy, which is not my purpose.

It is therefore ordered upon accounting had, the defendant owes plaintiffs $300; that he pay plaintiffs same forthwith, upon failure to do so let execution issue.